**SIGNED THIS: June 29, 2015**

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |  |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 13-72140 |
| KYLE A. NAVE and | ) | |
| AMANDA M. NAVE, | ) | |
| | ) | Chapter 7 |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| NANCY J. GARGULA | ) | |
| United States Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 14-07012 |
| | ) | |
| KYLE A. NAVE, | ) | |
| | ) | |
| Defendant. | ) | |

# O P I N I O N

This matter is before the Court for decision after trial of an amended complaint filed by the United States Trustee, Nancy J. Gargula ("UST"), to deny the discharge of the Debtor, Kyle A. Nave. Because the UST has met her burden to prove that Mr. Nave knowingly made false oaths and refused to comply with a lawful court order, his discharge will be denied.

## I. Factual and Procedural Background

The Debtors, Kyle A. Nave ("Defendant") and Amanda M. Nave, filed their voluntary petition for Chapter 7 relief on November 11, 2013. On their Statement of Financial Affairs ("SOFA"), the Debtors disclosed ownership by the Defendant of Nave Electric, Inc. ("Nave Electric"), a business which ceased operation in January 2013. On their Schedule A – Real Property, the Debtors listed three jointly-owned parcels of real estate in Decatur, Illinois: (1) 910 South Gravel Pit Road; (2) 33 West Westway; and (3) 1777 West Garfield. On their Schedule B – Personal Property, the Debtors listed ownership of two bank accounts – a joint checking account at First National Bank in Taylorville and a Busey checking account owned solely by Mrs. Nave. The Defendant also claimed ownership of two firearms – a HiPoint 9mm and a Mossberg 12-gauge shotgun.

The Debtors' first meeting of creditors ("§341 meeting") was held in December 2013. Thereafter, the UST filed a motion seeking to compel the Defendant to appear for further examination under Federal Rule of Bankruptcy Procedure 2004. In the absence of objection, an order ("2004 Order") allowing the UST's motion was entered. As requested, the 2004 Order required the Defendant

to provide documents to the UST no later than one week before the scheduled examination. The required documents included the Debtors' 2011 and 2012 tax returns, the 2011 and 2012 tax returns for Nave Electric, copies of all bank statements for each and every account that either Debtor maintained or deposited any funds into since the beginning of 2013, and copies of all records for all assets transferred for the period of two years preceding the Debtors' bankruptcy filing.

The UST filed a timely complaint objecting to the discharge of the Defendant and subsequently filed a First Amended Complaint ("Amended Complaint"). Count I of the Amended Complaint alleges that the Defendant refused to obey the 2004 Order in that he did not timely produce his 2011 tax return, the 2011 corporate tax return for Nave Electric, and all bank statements for each and every account that either Debtor maintained or deposited any funds into since the beginning of 2013. Accordingly, the UST argues that the Defendant should be denied a discharge under §727(a)(6)(A).

Counts II and III of the Amended Complaint allege that the Defendant should be denied a discharge under §727(a)(4)(A) because he knowingly and fraudulently made false oaths on his schedules and SOFA and at the §341 meeting. The UST contends that the Defendant failed to disclose his pre-petition transfer of three parcels of real estate to his mother and his pre-petition sales to unrelated parties of a Mod-A-15 DPMS firearm, an Armlite 7.62 x 39 MI5 firearm, a Kris Vector firearm, a Saiga 12-gauge firearm, an FNS-9 9MM firearm, an FNG 5.7 x 28 firearm, and a Savage Aims 338 Lapua firearm. The UST also contends that the Defendant failed to disclose his ownership interest in a Ruger 1022

shotgun, a financial account at State Bank of Niantic, and real estate located at 245 South Wyan, Decatur, Illinois. The UST further alleges that the Defendant made a false oath by testifying at his §341 meeting that he had not received any income between January and August of 2013, and that he had not made any payments or given any gifts to any friends or relatives in the year prior to filing his bankruptcy petition.

The Defendant answered the Amended Complaint, admitting most of the factual allegations but denying that he had willfully refused to comply with the 2004 Order and denying that he had knowingly and fraudulently made false oaths when completing his schedules and SOFA and while testifying at his §341 meeting. Prior to trial, the UST served the Defendant with a Request to Admit. The Request to Admit and the Defendant's answers to the Request, which generally admitted most of the enumerated facts, were introduced into evidence at trial by agreement. At trial, the Defendant was the sole witness.

The Defendant testified that he was the sole owner and shareholder of Nave Electric, which was his main source of income until January 2013 when he began winding down the business. He stated that from then until August 2013, with the exception of finishing a few projects for Nave Electric, he was unemployed. In August 2013, the Defendant started working for Alpha Electric as an electrician, and continued that employment through the time of his bankruptcy filing. The Defendant acknowledged signing his petition after reviewing it and having the opportunity to discuss its contents with his attorney.

The Defendant admitted that he conveyed three parcels of real estate to his

mother prior to filing but did not disclose the transfers on his SOFA. According to the Defendant, he signed a quitclaim deed transferring his interest in the properties located at 1854 North Union, 1825 North Church, and 1435 North Woodford, in Decatur, Illinois, to his mother on January 1, 2012. The Defendant did not acknowledge his signature on the deed and have the deed notarized, however, until October 9, 2013. The deed was recorded the following day. In consideration for the deed, the Defendant received $4000 from his mother in January 2012, and he stated that the amount was consistent with the properties' value. By way of background, the Defendant explained that he started a rental property business with his parents many years earlier and they took control of the business in 2007 when the Defendant started Nave Electric. He said that the transfer of the three parcels, which were rentals, to his mother was intended to formally recognize that the rental business belonged to his parents. The Defendant claimed that he had misunderstood his duty to disclose the transfer, believing that he was not required to make the disclosure because the transfer occurred more than one year prior to filing.

The Defendant also testified as to three accounts under his control and held at State Bank of Niantic. Two of the accounts were owned by the Defendant individually and were admittedly not disclosed on his schedules. One of those accounts was closed in May 2013, and the Defendant stated he had simply forgotten about it. The other, owned by the Defendant "d/b/a Nave Properties" ("d/b/a account"), was open and had a small balance at the time of the bankruptcy filing. The Defendant testified that the d/b/a account was used by his

parents for the rental property business. He admitted that numerous checks bearing his signature had been written on the account including several large checks to his parents. The Defendant denied using the account or issuing checks to his parents; he said he was doubtful that he had written and signed the checks himself but could not recall for sure. He did admit, however, that the rental income from the Garfield property — still owned by the Defendant and listed on his Schedule A — was deposited into the account but not disclosed on his bankruptcy schedules. And he conceded that, at least as of April 2013 and through the date of filing, monthly bank statements for the d/b/a account were mailed to his home address.

The third account was a corporate account for Nave Electric, from which the Defendant testified that, between January and April of 2013, he issued checks to himself for wages and shareholder distributions totaling approximately $29,000. The Defendant also admitted that at the first meeting of creditors he testified that he had received no income from any source during that same period of time.

The Defendant also testified as to two parcels of real estate in Decatur, Illinois, related to Nave Electric. The first, 246 South Wyan, he described as a vacant lot owned by the corporation and used for storage. The second parcel, 245 South Wyan, served as the corporation's business location but was actually owned by the Defendant individually. The Defendant testified that he mistakenly thought that 245 South Wyan was owned by Nave Electric because it was paid for with corporate assets and used for business purposes. For those reasons, the Defendant did not disclose the 245 South Wyan property on his schedules.

The Defendant also admitted that he sold several firearms to unrelated third

parties in exchange for cash prior to filing for bankruptcy and without disclosing the transfers. The Defendant admitted that between November 2012 and June 2013 he received a total of $13,500 in proceeds from the gun sales. The Defendant said the money was placed in a safe at his house and was all spent prior to filing bankruptcy. Again, the Defendant claimed to misunderstand his obligation to disclose, believing he was only required to disclose transfers of "bigger items." Of the three guns he still owned at the time of filing, the Defendant admitted that he failed to disclose a Ruger 1022 shotgun. Although he said he had "no clue" as to why he did not disclose the firearm, he testified that it was not his intent to hide his interest in the shotgun and that he was forthcoming during the Chapter 7 trustee's inspection of his home.

Regarding his compliance with the 2004 Order, the Defendant did not dispute receiving a copy of the 2004 Order. He stated that he turned over everything he had to his attorney at the time, but he could not recall specifically which documents he gave to his attorney or whether he produced the bank statements ultimately obtained by the UST. The Defendant did acknowledge that he had not complied with the 2004 Order by the deadline set.

Attorneys for both parties presented arguments at the conclusion of the trial. The matter is ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the matter pursuant to 28 U.S.C. §1334. An objection to discharge is a core proceeding. *See* 28 U.S.C. §157(b)(2)(J).

### III. Legal Analysis

The Code requires debtors to accurately and truthfully present themselves before bankruptcy courts. *Richardson v. Clarke (In re Clarke)*, 332 B.R. 865, 869 (Bankr. C.D. Ill. 2005). In an action to deny a debtor a discharge, the plaintiff bears the burden of proof. *See* Fed. R. Bankr. P. 4005; *First Federated Life Ins. Co. v. Martin (In re Martin)*, 698 F.2d 883, 887 (7th Cir. 1983). "However, once the plaintiff has established that the acts complained of occurred, the burden of production shifts to the debtor who must then come forward with a credible explanation of his actions." *Clean Cut Tree Service, Inc. v. Costello (In re Costello)*, 299 B.R. 882, 894 (Bankr. N.D. Ill. 2003) (citing *Martin*, 698 F.2d at 887).

*A. False Oath under 11 U.S.C. § 727(a)(4)(A)*

The UST's objection to the Defendant's discharge relies, in part, on §727(a)(4)(A), which provides:

> (a) The court shall grant the debtor a discharge, unless—
>
> . . .
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case—
>
> (A) made a false oath or account[.]

11 U.S.C. §727(a)(4)(A).

Section 727(a)(4)(A) is intended to enforce a debtor's duty of disclosure and to ensure that the debtor provides reliable information to those who have an interest in the administration of the estate. *In re Carlson*, 231 B.R. 640, 655

(Bankr. N.D. Ill. 1999), *aff'd*, 250 B.R. 366 (N.D. Ill. 2000), *aff'd*, 263 F.3d 748 (7th Cir. 2001). Under §727(a)(4)(A), a plaintiff seeking to deny a debtor a discharge must establish that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with the intent to deceive; and (5) the statement related materially to the bankruptcy estate. *Neary v. Stamat (In re Stamat)*, 395 B.R. 59, 73 (Bankr. N.D. Ill. 2008), *aff'd*, 2009 WL 2916834 (N.D. Ill. Sept. 2, 2009), *aff'd*, 635 F.3d 974 (7th Cir. 2011).

"A debtor's petition, schedules, statement of financial affairs, statements made at a §341 meeting, testimony given at a Federal Rule of Bankruptcy Procedure 2004 examination, and answers to interrogatories all constitute statements under oath for purposes of §727(a)(4)." *Structured Asset Services, LLC v. Self (In re Self)*, 325 B.R. 224, 245 (Bankr. N.D. Ill. 2005) (citations omitted). The Defendant made several statements under oath that were false.

The Defendant made a number of false statements on his SOFA and schedules. He failed to disclose pre-petition rental income from the Garfield property and his ownership interest in the property located at 245 South Wyan. He failed to disclose his ownership interest, at or within one year of filing, in two non-corporate State Bank of Niantic financial accounts. The Defendant also did not disclose several transfers of firearms that occurred within the year preceding bankruptcy or his ownership interest in the Ruger 1022 shotgun. Omissions from bankruptcy forms and schedules constitute a false oath for purposes of §727(a)(4)(A). *City of Roodhouse v. Stice (In re Stice)*, 2014 WL 806202, at *5

(Bankr. C.D. Ill. Feb. 28, 2014); *see also Skavysh v. Katsman (In re Katsman)*, 771 F.3d 1048, 1049-50 (7th Cir. 2014).

The Defendant also did not disclose the pre-petition transfer of three parcels of real estate to his mother. While the parties disputed when the transfer occurred, according to the Defendant's responses to the UST's Request to Admit, the transfer occurred no earlier than January 1, 2012, when he claims to have signed the deed. In completing his SOFA, the Defendant was required to disclose all gifts made within one year preceding bankruptcy and all other transfers made within two years immediately prior to filing. At trial, the Defendant testified that he received $4000 in exchange for the properties transferred, a sum he considered fair given the location and condition of the properties. Thus, the transfer to his mother was a transfer within the two-year pre-petition disclosure period. Although the Defendant's attorney argued that the transfer actually occurred much earlier than 2012 because his parents were using the properties well before then, no evidence was presented to support this divergence from the Defendant's admissions that the transfer occurred in January 2012. Based on the evidence presented, the transfer of real estate to the Defendant's mother occurred within the two years preceding bankruptcy and should have been disclosed.

In addition, the Defendant made false statements under oath at the §341 meeting. At trial, the Defendant admitted that he had received about $29,000 from Nave Electric between January and April of 2013, despite denying that he received any income in that period at the §341 meeting and failing to disclose the corporate distributions on his SOFA. All of the above-described statements by the Defendant

on his schedules and SOFA and at the §341 meeting were made under oath and were false. The UST easily met her burden as to the first two elements of proof required.

The third element of proof required is that the Defendant knew his statements made under oath were false. The Defendant knew that he had transferred real estate to his mother during the period in question because he took the deed he claims to have signed in January 2012 to a notary in October 2013 to acknowledge his signature and have the deed notarized. He knew he sold guns for cash and received distributions from his corporation during the year before he filed. He knew his rental income was being deposited in the State Bank of Niantic account that he did not disclose. The UST clearly established the Defendant's actual knowledge of all of these matters, and his testimony that he forgot the information or misunderstood his obligation to disclose was not credible. The schedules and SOFA clearly ask for the required information, and the Chapter 7 trustee's questions at the §341 meeting were unambiguous. The UST has met her burden of showing that the Defendant knew the information he was providing was false when he provided it.

The fourth element of required proof is that the Defendant acted with fraudulent intent. A showing of reckless disregard for the truth is sufficient to prove fraudulent intent. *Stamat v. Neary*, 635 F.3d at 982. Fraudulent intent can be inferred from the circumstances, including a debtor's course of conduct preceding bankruptcy. *Stamat*, 395 B.R. at 73-74. Generally, a discharge should not be denied for a simple mistake or inadvertence. *Clarke*, 332 B.R. at 872. But

"there comes a point when the aggregate errors and omissions cross the line past which the debtor's discharge should be denied." *Stamat*, 395 B.R. at 74 (citations omitted).

The Defendant contends that he simply forgot about some of the assets and transfers, and that he misunderstood what was required to be disclosed. One omission or misstatement might be explained away, but the Defendant's excuses for each particular false statement or omission here are overshadowed by the larger picture. *Stamat*, 635 F.3d at 982. In the aggregate, the Defendant's course of conduct establishes a clear pattern of reckless disregard for the truth, and nothing more is required. *Katsman*, 771 F.3d at 1050; *Stamat*, 395 B.R. at 74-75. The UST has met her burden that the Defendant acted with fraudulent intent.

The fifth and final hurdle for a plaintiff is proving that the false statements related materially to the bankruptcy case. Statements are material if they relate to a debtor's business transactions or estate, involve the discovery of assets, or concern the existence and disposition of property. *Stamat*, 635 F.3d at 982. The issue is not merely one of value or detrimental effect to the creditors. *Id.* But, generally, something is immaterial only if it is utterly trivial. *Katsman*, 771 F.3d at 1050-51. The Defendant's nondisclosure of assets and transfers of property were directly related to his estate and obfuscated his true financial situation. *Clarke*, 332 B.R. at 873. The undisclosed information was material to the case.

After considering the totality of the evidence and the credibility of the witness, the Court finds that each element under §727(a)(4)(A) has been proven by a preponderance of the evidence. The Defendant's discharge must be denied.

*B. Refusal to Comply with Court Order under 11 U.S.C. §727(a)(6)(A)*

The UST also objects to the Defendant's discharge for refusing to comply with the Court's 2004 Order under §727(a)(6)(A), which provides:

(a) The court shall grant the debtor a discharge, unless—

   . . .

   (6) the debtor has refused, in the case—

   (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify[.]

11 U.S.C. §727(a)(6)(A).

Effective administration of a bankruptcy case requires a debtor's complete compliance with lawful court orders, including orders requiring the debtor to produce documents relating to his financial condition. *See Grochocinski v. Eckert (In re Eckert)*, 375 B.R. 474, 480 (Bankr. N.D. Ill. 2007), *aff'd*, 2008 WL 4547224 (N.D. Ill. Apr. 2, 2008); *Missouri v. Allen (In re Foster)*, 335 B.R. 709, 716 (Bankr. W.D. Mo. 2006). Refusal to comply with such orders is grounds for denying the debtor's discharge. *Id.* The majority of courts have found that the word "refused" — as distinguished from the word "failed," which is used elsewhere in §727(a) — requires a showing of a willful or intentional act. *See Eckert*, 375 B.R. at 480 (collecting cases). "As a consequence, the mere failure of a debtor to obey a court's order, without more, is insufficient to deny or revoke a debtor's bankruptcy discharge." *Id.* (quoting *Taunt v. Patrick (In re Patrick)*, 290 B.R. 306, 313 (Bankr. E.D. Mich. 2003)). But the plaintiff can meet its burden of proof by showing that the debtor received the order in question and failed to comply with its terms.

*Eckert*, 375 B.R. at 480. It is then up to the debtor to explain his noncompliance. *Id.*

There is no dispute that the Defendant received the 2004 Order. The Defendant also acknowledged that he had not complied with the Order by the deadline, and testified that several days after the deadline he was still gathering requested documents. Of course, untimely compliance is not necessarily always equated with a refusal to comply. *See Wan Ho Indus. Co. v. Hemken (In re Hemken)*, 513 B.R. 344, 364 (Bankr. E.D. Wis. 2014). But evidence of a failure to comply with an order by the deadline is sufficient to shift the burden to the Defendant to explain whether and to what extent he ultimately complied or why he did not comply. *See Kutrubis v. Bowman (In re Kutrubis)*, 486 B.R. 895, 901-02 (N.D. Ill. 2013), *aff'd*, 500 F.App'x. 306 (7th Cir. 2013). The 2004 Order specifically identified the documents that were to be produced. The Amended Complaint was specific as to which documents had not been produced. Despite this, the Defendant made only meager attempts to explain himself. He testified that he turned over everything he had to his attorney at the time, but could not recall at trial which documents were actually delivered to the attorney. The Defendant produced or pointed to no evidence of his compliance beyond his vague statements, and failed to meet his burden going forward.[1]

Significantly, the unproduced bank statements, which the Defendant

---

[1] The Defendant did state that he did not have a 2011 corporate tax return for Nave Electric to produce to the UST because that return had never been prepared. Although it is not clear when he first told this to the UST, it ultimately does not change the result here. The Defendant still failed to explain why he did not produce the other required documents.

admitted in his answer to the Amended Complaint were obtained by the UST directly from the bank, uncovered the damaging information that served as a basis for denying the Defendant's discharge under §727(a)(4)(A). Under the circumstances, the Court finds that the Defendant's failure to comply with the 2004 Order was willful and intentional. *See Foster*, 335 B.R. at 716.

For the reasons set forth above, the Court finds that the UST has met her burden under §727(a)(6)(A). The Defendant's discharge must be denied.

### IV. Conclusion

The UST has met her burden in establishing that the Defendant demonstrated reckless disregard for the truth in failing to disclose assets and pre-petition transfers of property, constituting false oaths. The UST also proved that the Defendant received and failed to comply with an order of this Court, shifting the burden to the Defendant to refute or otherwise explain his noncompliance, which he failed to do. Under the circumstances, the UST's objections to the Defendant's discharge under 11 U.S.C. §727(a)(4)(A) and (6)(A) must be sustained.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###